JOHN REDZINA, complainant-appellant,

*v.*

PROVIDENT INSTITUTION FOR SAVINGS IN JERSEY CITY et al.,
defendants-respondents.

[Decided May 19th, 1924.]

1. State jurisdiction by statutory proceedings against absent defendants is permitted by the fourteenth amendment only in cases where the action against such defendants affects property whose *situs* is within the state exercising such jurisdiction.

2. The right of one depositor in a joint savings account against the bank, has no *situs* in New Jersey which would sustain the service by publication of a bill by the other co-depositor to try title to the fund deposited.

On appeal from the court of chancery.

*Mr. Adolph Wolman (Mr. Maximilian T. Rosenberg,* of counsel), for the complainant-appellant.

*Messrs. Insley, Vreeland & Decker,* for the defendants-respondents.

The opinion of the court was delivered by

CLARK, J.

This is an appeal from the court of chancery. The legally significant facts disclosed by the bill, answer and proofs are undisputed. On February 3d, 1919, a savings account was opened in the Provident Institution for Savings in Jersey City, one of the defendants herein, in the joint names of John Redzina, the complainant in this action, and of Eva Redzina, his wife, the other defendant. At the time of this deposit a depositor's pass-book, No. 180145, was issued by the institution. It does not appear from the printed case

that any form of depositor's pass-book was offered in evidence at the hearing before the vice-chancellor. It seems to have been admitted at the argument in this court, however, that complainant's deposit book was in the usual form for a joint account and permitted either of the joint depositors or the survivor to draw against the account. Article 8 of the by-laws of the defendant institution provided that—

"Deposits and dividends shall be drawn out only by the depositors in person, or by their written order, or by some person legally authorized, and only upon the production of the depositor's book that such payments may be entered therein, and all payments to persons who present the deposit book shall be valid payments to discharge the bank and its officer."

At the date of the deposit and until August 3d, 1921, these depositors lived in Jersey City. John Redzina works for the Erie railroad, and now maintains that the savings from his wages constitute all of the money at any time deposited in defendant institution. On August 3d, 1921, Eva Redzina left her husband's house. She·has not been seen or heard from since that date and her present whereabouts is unknown to her husband. Ever since her departure, the depositor's pass-book has been missing. He, in his testimony, accounts for his inability to produce this book on the various and inconsistent theories that his wife had hidden, destroyed· or still has the book in her possession.

In these circumstances, and after unsuccessful demand upon the bank for the payment of the balance on deposit in account No. 180145, John Redzina filed a bill in equity against the Provident Institution for Savings and against his wife, Eva Redzina. No attempt was made to serve the latter personally by leaving any process at her husband's residence. She has, however, been served by publication as provided for in section 12 of the Chancery act (*P. L. 1902 p. 514*), in the case of defendants out of, or not found within, the state. Upon her failure to appear, a decree *pro confesso* was made and filed in accordance with the procedure authorized in section 14 of the same act. *P. L. 1902 p. 515.*

The Provident Institution for Savings, on the other hand, has answered, declaring its willingness to pay the balance, standing in the joint names of John and Eva Redzina, to whatever person or persons the court of chancery may find are equitably entitled thereto. In pursuance of this willingness, they ask leave to pay the money to the clerk of the court of chancery.

The learned vice-chancellor considered that the courts of New Jersey had no jurisdiction to determine the ownership of this fund. As the offer of the defendant bank to pay was conditional upon an affirmation of the question, the bill was necessarily dismissed.

Counsel for the complainant do not seem to have questioned the right of the bank to place the funds in the hands of the court. It is not necessary for us, therefore, to consider whether this can be done by way of interpleader or because of the terms of the contract of deposit. As a matter of practice, since complainant has made his wife a party, the bank's answer is, in legal substance, a counter-claim by way of interpleader. *G. P. Farmers Coal and Supply Co.* v. *Albright, 89 N. J. Eq. 283.* It may be that Mrs. Redzina's right to draw against the joint account and her probable possession of the evidence—*i. e.,* the pass-book—necessary to exercise such right, subject the bank to the danger of a suit by her. *National Bank* v. *White, 93 N. J. Eq. 109.* Moreover, the contract of deposit requires production of the pass-book. Unless the court will relieve the depositor of its terms, the bank's refusal to pay is, of course, justifiable on this ground. It seems to us doubtful whether, in the facts of the case at bar, can be found the reasons underlying the relief given to a depositor in a case where his pass-book has been lost or destroyed. *Cosgrove* v. *Provident Institution for Savings, 64 N. J. Law 653, 657.*

That the jurisdiction of the courts of a state depends upon physical power is fundamental. *McDonald* v. *Mabee, 243 U. S. 90.* So, a party resident beyond the confines of a state cannot be required to come within its borders and subject his personal controversy to its tribunals, even upon receiving

notice of the suit at the place of his residence. To hold otherwise would be a futile attempt to extend the authority and control of a state beyond its own territory. *Baker v. Baker, Eccles & Co., 242 U. S. 394.* Conversely, a state and its courts have power and jurisdiction over all things, tangible and intangible, whose *situs* is within its physical limits. *Coe v. Errol, 116 U. S. 517.* Our law "hears before it condemns," and therefore considers it contrary to the first principles of justice to hold one bound by a judgment who has not had such opportunity. *Pennoyer v. Neff, 95 U. S. 714; Grannis v. Ordean, 234 U. S. 385.* The adoption of the fourteenth amendment (1868) established these principles of private international law (conflict of laws) as law for all of the states. *Smith v. Colloty, 69 N. J. Law 365, 371.* Thereafter the assertion of the invalidity of a state court's judgment in violation thereof was made a matter of federal right. *Baker v. Baker, Eccles & Co., supra.*

Personal notice in cases where an individual's whereabouts is unknown is, of course, impossible. Litigation affecting such a one's property might result in its withdrawal from commerce unless this requirement were in some way modified. Presumably, all of us keep in touch with what goes on in the place where our property is located. The courts have accordingly held that we are apprised of any claims with respect thereto if reasonable means—such as publication in the local newspapers—are taken to make the matter public at such place. *Arndt v. Griggs, 134 U. S. 316.* It follows, then, that where there is a *res* within the borders of the state, against which a judgment *in rem* or *quasi in rem* may be taken, the constitutional requirements, both of notice to parties and of power in the courts, are met. *Pennington v. Fourth National Bank of Cincinnati, 243 U. S. 270.*

Some of the state courts have decided that our allegiance to our state, equally with our property therein, furnishes a basis for jurisdiction, and have permitted personal judgments against absent citizens. *Bickerdike v. Allen, 41 N. E. Rep. (Ill.) 740; Mabee v. McDonald, 175 S. W. Rep. (Texas) 676.* In *McDonald v. Mabee, supra,* Mr. Justice Holmes held

that service by publication upon a party absent from the state, and not intending to return thereto, although technically domiciled therein, was not sufficient to support a personal judgment against him. He felt that publication was not the substituted service most likely to result in his receiving actual notice of the litigation and was not, therefore, "substantial justice." This made it unnecessary for him to pass upon the fundamental question of jurisdiction, suggested by the decisions in the state courts above referred to. While Mrs. Redzina may be said to be technically domiciled in New Jersey, that being the state of her husband's residence, her actual residence is unknown, and service by publication, as it is the only legally practical way, would seem to be a reasonable means of giving her notice. This point does not seem to have been presented to the court below and we are, therefore, precluded from expressing our views upon the question left open by the United States supreme court, in *McDonald* v. *Mabee, supra.*

Counsel following, no doubt, although not citing, the suggestion of Vice-Chancellor Pitney, in *Skillman* v. *Weigand, 54 N. J. Eq. 198,* have drawn their bill on the theory that Mrs. Redzina was only an agent authorized by her husband to draw his money from the bank. If such were the case, the agency could be revoked without resort to the courts. An agent, to collect, stands in no legal relationship to the person from whom the collection is to be made, but, obviously, the contrary is true of a depositor in a joint account. *New Jersey Title Guaranty and Trust Co.* v. *Archibald, 91 N. J. Eq. 82.*

Mrs. Redzina has, then, some legal interest in the funds of a savings institution whose banking house is within the state. If that interest has its *situs* in New Jersey, we have seen that our courts have jurisdiction in the premises. A savings bank depositor's interest in the fund deposited may conceivably be either tangible or intangible personal property. If we hold it to be the former, an insuperable objection to finding its *situs* in New Jersey arises from the nature of a savings bank's assets. The court's desire to give a name

to the undoubtedly fiduciary character of the managers of a savings bank has led them to use the language of trusts. *Williams* v. *McKay,* *40 N. J. Eq. 189;* Barrett v. *Bloomfield Savings Institution, 64 N. J. Eq. 425,* without, we think, intending to apply, to the full extent at any rate, the legal attributes of a strict trust. However that may be, the cases do not declare that a savings bank depositor is the owner of any particular part of the funds of the bank. In fact, the contrary view has been expressed. *Chester* v. *Halliard, 36 N. J. Eq. 313.* Equally, the idea of proportionate ownership in the common fund by savings bank depositors, set forth in *Hannon* v. *Williams, 34 N. J. Eq. 255,* is in terms opposed to their dominion over any particular portion of such funds.

It is common knowledge, and the proofs in this case are not to the contrary, that among the investments of a savings bank are included bonds of foreign corporations and deposits in banks outside of the state. Clearly, to establish their *situs* with the state involves a finding that the *situs* of a debt is at the domicile of the creditor. This is contrary both to well-established authority and to the contention of counsel for the complainant. Since, either on the theory of trust or of proportionate ownership, the absent defendant can share only in the assets of the bank generally and not in any particular part thereof, he is, therefore, legally entitled to property whose *situs* is without the state..

On the other hand, if we regard a savings bank depositor's interest as intangible and a chose in action against the bank, it is immaterial in what jurisdiction the latter has its actual assets. The determination of the *situs* of the chose in action would, in that case, depend upon two considerations—*first,* is there an analogy between a stockholder in a corporation and a proportionate owner of the funds of a savings bank? If there is, the doctrine of *Amparo Mining Co.* v. *Fidelity Trust Co., 75 N. J. Eq. 555,* is applicable and the courts of New Jersey would have jurisdiction over the absent depositor in the same way as that case held them to have jurisdiction over an absent stockholder. We do not, however, think that there is any such analogy.

The reason for jurisdiction over the latter lies in the fact that the stockholder's interest in the legal entity (the corporation) arises as part of the scheme of the creation by the state of such entity. In other words, his ownership relates directly to a stock book, provision for which is made by the law under which the corporation is created. *P. L. 1896 pp. 290, 292; C. C. Langdell* in *11 Har. L. Rev. 536*. In the case of a depositor in a savings bank, his right against the bank arises quite apart from any affirmative action of the state creating such bank. It is not dependent upon anything done or left undone upon the books of the bank. They are merely useful as evidence to define and limit the extent of the liability and corresponding right.

*Second.* If we adopt the view that a savings bank and its depositor are debtor and creditor (*Chester* v. *Halliard, 36 N. J. Eq. 313*), is the *situs* of a debt at the domicile of the debtor bank in this state, and, accordingly, within the jurisdiction of our courts? Upon this question, many and widely divergent opinions have been expressed. In the case of things having spatial qualities—*i. e.,* tangible things—the power of control and location coincide. In the case, however, of a debt, which is a mere forced relation between parties, and is incapable of location or actual *situs* (see *National Fire Insurance Co.* v. *Chambers, 53 N. J. Eq. 468*), it would seem that control must be obtained by making use of the relation. It must depend, therefore, upon jurisdiction over both, and not one of the parties to the debt. *3 Beale Sum. Con. L. 507; Mahr* v. *Norwich U. F. Insurance Co., 127 N. Y. 452; 28 N. E. Rep. 391.* Only the court which has both the debtor and creditor before it can compel a release from the creditor and an assignment of the action of the creditor. Prof. Beale, in *27 Harv. Law R. 107.* Only that court, then, has, in our opinion, the effectual control referred to in our cases as a prerequisite to jurisdiction. *Elmendorf* v. *American Combustion Co., 80 N. J. Eq. 461.*

The cases in the United States supreme court have not, perhaps, adopted the principle suggested above to what might be considered its logical extent. Thus, they permit juris-

diction over a debt by publication against the absent creditor, at the domicile of the debtor where it is sought to found administration (*Cunnius* v. *Reading School Dist., 198 U. S. 458*), or for purposes of taxation. *Blackstone* v. *Miller, 188 U. S. 189* (inheritance tax); *Liverpool and Globe Insurance Co.* v. *Orleans Assessors, 221 U. S. 355* (property tax), and in escheat; *Security Savings Bank* v. *California, Advance Opinions of the United States Supreme Court 1923-1924 p. 119.* The even temporary presence of the debtor has been held to be sufficient to allow garnishment of a debt. *Harris* v. *Balk, 198 U. S. 215,* although here the illogical requirement of actual notice to the principal debtor seems to be insisted upon. *Harris* v. *Balk, supra.* Nevertheless, that court refuses jurisdiction where, as in the case at bar, it is sought to try title to and decide whether or not the absent defendant is the owner of the credit made the basis for the action. *New York Life Insurance Co.* v. *Dunlevy, 241 U. S. 518.*

Service by publication is based upon the convenient assumption that the public keeps in touch with what is published in the newspapers in the places where its interests are. We question the propriety or justice of extending this theory further to include as well the newspapers of the domiciles of debtors. These, even in the case of institutions, are subject to change without regard to the wishes or knowledge of creditors.

Both on principle and precedent, therefore, we conclude that the learned vice-chancellor correctly determined that the due process clause of the federal constitution stands as a barrier to the assumption of jurisdiction over the absent defendant.

The decree should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, MINTURN, BLACK, KATZENBACH, GARDNER, VAN BUSKIRK, CLARK—8.

*For reversal*—PARKER, KALISCH, CAMPBELL—3.