89 N.J. Super. 518 (1965)
215 A.2d 579
INSURANCE COMPANY OF NORTH AMERICA, ET AL., PLAINTIFFS,
v.
ALLIED CRUDE VEGETABLE OIL REFINING CORPORATION, BY ITS TRUSTEE IN BANKRUPTCY, DANIEL F. DELEAR, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 17, 1965.
*523 Mr. Harold A. Price and Mr. Stewart G. Pollock for plaintiffs (Messrs. Schenck, Price, Smith & King, attorneys).
Mr. David N. Ravin and Mr. Edward Gross for defendant Allied Crude Vegetable Oil Refining Corporation, by its trustee in bankruptcy, Daniel F. DeLear (Messrs. Ravin & Ravin, attorneys).
Mr. Stanley Weiss and Mr. David M. McCann for defendants Bank of America, Bank of America National Trust and Savings Association, Scarburgh Company, Inc., J. Henry Schroder Banking Corporation, The Marine Midland Trust Company of New York, and the Franklin National Bank of Long Island (Messrs. Carpenter, Bennett & Morrissey, attorneys).
Mr. Everett M. Scherer for defendant National Dairy Products Corporation (Messrs. Riker, Danzig, Scherer & Brown, attorneys).
Mr. Charles H. Hoens, Jr. and Mr. Theodore L. Abeles for defendant J.R. Williston & Beane, Inc. (Messrs. Lum, Biunno & Tompkins, attorneys).
Mr. Burton L. Eichler for defendant Whitney National Bank of New Orleans (Messrs. Zucker, Brach & Eichler, attorneys).
Mr. Frederic K. Becker for defendants Continental Grain Company and Irving Trust Company (Messrs. Wilentz, Goldman & Spitzer, attorneys).
Mr. Thomas J. O'Neill and Mr. Paul T. Murphy for defendant Bell Financial Corporation (Messrs. Crummy, Gibbons & O'Neill, attorneys).
*524 Mr. John W. Griggs and Mr. Donald W. deCordova for defendant Continental Illinois National Bank and Trust Company (Messrs. Morrison, Lloyd & Griggs, attorneys).
Mr. John J. Monigan, Jr. for defendants Brown Brothers Harriman & Company and Morgan Guaranty Trust Company of New York (Messrs. Stryker, Tams & Dill, attorneys).
Mr. David Epstein for defendant A.J. Armstrong, Inc. (Messrs. Epstein & Fluharty, attorneys).
Mr. Samuel Allcorn, Jr. for defendant The Procter & Gamble Distributing Company.
MATTHEWS, J.S.C.
Plaintiffs instituted this action seeking to rescind a policy of insurance, designated W.S.-1, which covered vegetable oil allegedly in storage in Bayonne, New Jersey. The named insured in the policy is Allied Crude Vegetable Oil Refining Corporation (hereinafter Allied). Defendants in the action are Allied and various banks, producers of oil and dealers in oil which have been added to the policy by several endorsements. Since the commencement of this action several defendants have respectively noticed motions addressed to service of process and the jurisdiction over the person of those defendants. In addition, two defendants, Irving Trust Company and Continental Grain Company, seek a stay of this action.
I have heretofore disposed of several of the jurisdictional motions by oral opinion in open court. There remain for disposition motions made on behalf of three national bank defendants which have moved to dismiss the action as against them for improper venue. In addition, there is pending, on behalf of all defendants, a motion to dismiss the action on the ground that all indispensable parties to the transactions referred to in the complaint cannot be joined in this action because of conceded lack of jurisdiction. Defendant Irving Trust Company has moved to dismiss on the ground of lack *525 of jurisdiction over the person and, in the alternative, also has moved as has defendant Continental Grain Company, for the afore-mentioned stay.

I.

MOTIONS BY THE THREE NATIONAL BANKS
Continental Illinois National Bank and Trust Company (Continental), Bank of America National Trust and Savings Association (Bank of America N.T.S.) and Whitney National Bank of New Orleans (Whitney) move to vacate the service of the summons and complaint, and to dismiss the complaint on the ground that each, as national banks, may not be sued in New Jersey by virtue of the provisions of 12 U.S.C.A., § 94.
Continental is a national banking association with its principal place of business in Chicago, Illinois. Bank of America N.T.S. is a national banking association with its principal place of business in San Francisco, California. Whitney is a national banking association with its principal place of business in New Orleans, Louisiana.
Section 94 of chapter 2, Title 12, U.S.C.A. provides:

"§ 94. Venue of Suits
Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."
There is no question but that the provisions of this section, providing for special venue in suits against national banks, are mandatory. See Mercantile National Bank at Dallas v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963); Michigan National Bank v. Robertson, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963). The section is a venue statute only; it does not confer jurisdiction. Anderson v. First Security Bank of Idaho National Association, 54 F. *526 Supp. 937 (E.D. Idaho 1944); Bachman v. First Mechanics National Bank of Trenton, 69 F. Supp. 739 (D.N.J. 1947); Swift v. Fourth National Bank of Columbus, Georgia, 205 F. Supp. 563 (M.D. Ga. 1962). It has been held merely to be expressive of the Congressional purpose of specifying the precise courts in which Congress consented to have national banks subject to suit. Mercantile National Bank v. Langdeau, supra. The section applies to ordinary transitory actions, but has been held not to apply to local, in rem actions where the suit is one to determine interests in property at its situs. Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52 (1880). The benefits of the section may be found to have been waived by the failure of a national bank to assert the statute in a timely manner. See First National Bank of Charlotte v. Morgan, 132 U.S. 141, 10 S.Ct. 37, 33 L.Ed. 282 (1889); Michigan National Bank v. Robertson, supra.
It must be concluded that the provisions of section 94 will bar the action here as against each of the three defendant national banks, unless this action is to be considered a local action or the benefits of the statute have been found to have been waived by the banks or any of them.
Under our law, local actions are said to be such as require the venue to be laid in the county where the cause of action arose. These embrace all actions in which the subject or thing sought to be recovered is in its nature local. Ackerson v. Erie Railway Co., 31 N.J.L. 309, 311 (Sup. Ct. 1865). Cf. R.R. 4:3-2.
In Casey v. Adams, supra, the Supreme Court of the United States held that local actions are in the nature of suits in rem, and are to be prosecuted where the thing on which they are founded is situated. Plaintiffs argue in defense of the banks' motions that this court has jurisdiction over the bank defendants because the instant action is one classifiable as quasi in rem. In support of this position they cite Cameron v. Penn Mutual Life Insurance Co., 111 N.J. Eq. 24 (Ch. 1932). Of course, if this action should be construed to be quasi in rem, it does not follow that it is automatically exempt *527 from the mandate of section 94. Rather, the question is one of characterization and issue analysis. An action may be either local or transitory as to the place where it is to be tried, but as to its object, it may be either in personam or in rem. The problem of characterization hinges on the nature of the particular issue to be resolved  here, the place where the action is to be tried. Clearly, under our law this cannot be classified as a local action. Hence, it is not within the exclusion carved out of section 94 by the decisions in Casey v. Adams and Michigan National Bank v. Robertson, supra.
This conclusion does not mean that it need not be determined whether this action is one quasi in rem insofar as its object is concerned. If it is held to be such and the res is within the jurisdiction of the court, defendant national banks, if given sufficient notice and opportunity to be heard, would certainly be bound by any determination as to the extent of the interest of each in the res over which this court has jurisdiction.
The test for deciding whether an action is quasi in rem is whether the judgment sought will affect the interests of particular persons in designated property. Hanson v. Denckla, 357 U.S. 235, 246, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1957); Amparo Mining Co. v. Fidelity Trust Co., 74 N.J. Eq. 197 (Ch. 1908), affirmed 75 N.J. Eq. 555 (E. & A. 1909); Restatement, Judgments, § 3, comment (b), p. 15; § 32, comment (a), pp. 127-128 (1942). The test does not turn upon whether the relief prayed for seeks to control defendants' conduct, although in a quasi in rem action a defendant may be preliminarily restrained from engaging in certain activities with respect to the res. See e.g., Buchman v. Smith, 136 N.J. Eq. 246 (Ch. 1945), affirmed 137 N.J. Eq. 215 (E. & A. 1945). In such an action final relief will not require any personal decree or judgment against the defendant, since the court has control over the res. See e.g., Solomon v. Yudkin-Krell, Inc., 2 N.J. Super. 315 (Ch. Div. 1949). Certain types of actions, not quasi in rem, require in personam jurisdiction, even though they do not seek a money judgment from *528 the defendant or an order for him to do or refrain from doing any act. See e.g., Densby v. Acacia Mutual Life Association, 64 App. D.C. 319, 78 F.2d 203, 101 A.L.R. 863 (D.C. Cir. 1935) (rescission of insurance policy); Maryland Casualty Co. v. Martin, 88 N.H. 346, 189 A. 162 (Sup. Ct. 1937) (declaratory judgment as to coverage of insurance policy); New York Life Insurance Company v. Dunlevy, 241 U.S. 518, 36 S.Ct. 613, 60 L.Ed. 1140 (1916) (interpleader of proceeds under insurance policy).
There are, broadly, two types of actions quasi in rem. In one, plaintiff seeks to secure a preexisting claim in the property which is the subject matter of the action, and to extinguish or establish the nonexistence of similar interests of particular persons. In the other, plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him. Hanson v. Denckla, supra; Restatement, Judgments, § 32, p. 128 (1942). This action is clearly not one for attachment or garnishment, and cannot, therefore, be held to be in the second category described.
As I have noted, plaintiff relies on Cameron v. Penn Mutual Life Ins. Co., supra. Cameron involved a suit to reform a life insurance policy. Plaintiff was the widow of the insured and the defendants were the insurance company and the two sisters of the insured. Plaintiff sought to substitute a clause in the policy which would make the proceeds payable to her if she survived the insured for a clause which made the proceeds payable to the sisters. The insurance company and one of the sisters were served within this State. The other sister was a nonresident and was served by publication; she appeared specially to challenge the jurisdiction. The policy which was the center of the controversy was in the possession of complainant. The issue, as framed by the vice-chancellor, was whether the proceeding was in personam or quasi in rem. He determined that the action was quasi in rem and thus upheld his jurisdiction over the objecting defendant. He based his conclusion on the grounds that the policy, the res, against which a decree of reformation, if entered, would become effective, was *529 in the possession of complainant and within the control of the court; that the suit as against the absent defendant was against her only in respect to the res. Further, that the decree as to that defendant would affect only the policy by determining its form and would not be dispositive of her claim thereunder. He found that the objecting sister was given notice of the action, not that she might establish her right to participate in the proceeds of the policy, but that she might be heard on the issue respecting the identity of the terms of insurance. He held that not every suit to reform a written instrument is considered an action in personam, and observed that actions to correct deeds, to cancel them, and to reform notes are held to be actions in rem or quasi in rem.
A close study of the opinion in Cameron discloses certain erroneous assumptions. An action to reform or rescind a deed or mortgage on land in New Jersey may be quasi in rem as to absent defendants, not because the written instrument itself is a res, but because the thing which the instrument purports to represent or affect is the land which has its situs in this State. See Buchman v. Smith, supra. The reference made in Cameron to cases involving realty or interests therein seems to be inapposite to the question then before the court, because it is apparent that a contract of insurance does not itself embody the rights between the parties, but is evidence of them; in this context, the policy is a mere chose in action. Densby v. Acacia Mutual Life Association, supra; Insurance Co. v. Bangs, 103 U.S. 435, 26 L.Ed. 580 (1880). A chose in action is a species of intangibles, and the latter term has been defined as rights which are not related to physical things and are nothing more than relationships between persons which the law recognizes by attaching to them certain sanctions which are recognized in court. Curry v. McCanless, 307 U.S. 357, 365, 59 S.Ct. 900, 83 L.Ed. 1339 (1939).
A court does not acquire jurisdiction over an intangible by the presence within the state of a writing evidencing it. As Professor Beale states in volume I of his work on The Conflict of Laws, § 52.1:
*530 "Thus the binding character of a written contract * * * is not brought within the jurisdiction of a state because the contract * * * is written on paper which is within the state. It is only when the content of the paper derives its power from the document itself as in the case of a bond or a promissory note, that jurisdiction over the paper is also jurisdiction over the obligation written on it."
Further, the state of domicile of the debtor has no power to determine the personal rights of the creditor in an intangible, unless the creditor has been personally served or appears in the proceeding. Jurisdiction over an intangible can arise only from power over the persons whose relationships are the source of the rights and obligations. Estin v. Estin, 334 U.S. 541, 548, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948); see also, Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905); National Fire Insurance Co. v. Chambers, 53 N.J. Eq. 468 (1895); Elmendorf v. American Combustion Co., 80 N.J. Eq. 461 (E. & A. 1912); Redzina v. Provident Institution, 96 N.J. Eq. 346 (E. & A. 1924); Mechanics Finance Co. v. Austin, 8 N.J. 577 (1952).
In Cameron the vice-chancellor relied to a great extent on Perry v. Young, 133 Tenn. 522, 182 S.W. 577, L.R.A. 1917 B, 385 (Sup. Ct. 1916). In that case the insured had assigned a policy of insurance to his mother, who later died. The distributees of the mother's estate were then in the position of the mother insofar as any right in the policy was concerned. The insured brought an action to reform the assignment by seeking to insert therein a provision that in the event of his mother's prior death, the policy was to revert to him. The action was instituted because plaintiff wished to borrow on the policy, and the company had refused to accede to his request without the consent of the distributees. The insurance company and some of the distributees were subject to the personal jurisdiction of the court, but one of the distributees was without the jurisdiction and was served by publication. The constructive service was upheld. Thus, Perry v. Young, supra, may be said to stand for the proposition that an insurance policy may be property within a jurisdiction on which constructive *531 service may be based. It is apparent, however, that in that case, constructive service was upheld because the suit involved claimed interests in the policy, qua policy, and therefore the suit was brought to determine the rights of specific persons in that specific property. I do not believe, however, that the rationale of Perry v. Young can be extended to actions to cancel or reform an insurance policy, since these actions are traditionally in personam and must be supported by personal service. See Insurance Co. v. Bangs and Densby v. Acacia Mutual Life Association, supra; Appleman, Insurance Law and Practice, § 1852, p. 465.
A suit to rescind, cancel or declare void an insurance policy for the fraud or misrepresentation of the named insured does not seek to determine title to the policy, if the policy may be considered a species of property. Rather, the proceeding invokes the equitable jurisdiction of the court and seeks to abrogate the policy and the bilateral rights and duties arising thereunder. It does not seek to affect the rights of particular persons in specific property. See O'Hare v. Dayton & Union R. Co., 5 F. Supp. 1021 (S.D.N.Y. 1933), affirmed 68 F.2d 1011 (2 Cir. 1934). In O'Hare a holder of bonds sought, in part, a declaration that the bonds be adjudged valid obligations of the issuer. The court held that the action was plainly one in personam. It pointed out that defendant was not an adverse claimant of title to the bonds, and that it was merely the obligor. Accordingly, insofar as plaintiff sought to have the bonds declared valid obligations of defendant, the suit was in reality one to enforce a chose in action. The factual situation presented here seems to be the reverse of that found in O'Hare. Here plaintiffs seek to be free of any obligations owed to defendants. The fact remains, however, that there is no dispute as to the ownership of the policy or any claims to the policy as a specific piece of property.
From the foregoing it is apparent that it must be concluded that this action, as to its object, is not to be classified as quasi in rem. Since the object of this action may not be *532 characterized as quasi in rem, it is unnecessary to determine whether the policy itself may be regarded as a res within the jurisdiction which would serve as a constitutional basis for any exercise of power by the court to permit constructive service on defendants not subject to a service of process within this jurisdiction.
Plaintiffs argue that even if this court should find, as I have, that the provisions of 12 U.S.C.A., § 94 are binding upon it, the conduct of the national banks has been such so as to constitute a waiver of their rights derived under that section. It is true that the conduct of a national bank, either before the commencement of the action or after its institution, may constitute a waiver. See, generally, Annotation 1 A.L.R.3d 904 (1965). As to activity after the institution of this action, it is apparent that the banks have been vigilant in demanding the protection afforded by the section, and that there has been no act, accordingly, which may be considered to constitute waiver.
Plaintiffs main reliance is on pre-suit conduct by the national banks. They point out that loans by the banks to persons dealing in commodities were made on commodities stored in Bayonne, New Jersey; that warehouse receipts covering those commodities were taken as securities for the loans, and that the storage of the commodities in Bayonne and the loss of those commodities (the risk covered by the policy sued on) occurred in Bayonne. On the other hand, the banks point out that no transaction was effected by them within the State of New Jersey; that none of them do trust work or estate work in this State; that none has filed powers of attorney of any nature with the Commissioner of Banking and Insurance, and that none of the transactions by which they acquired the warehouse receipts and insurance endorsements in question was consummated within this State. It is apparent on the statement of the factual contentions that no intentional relinquishment may be found to have been made by the banks either directly or by implication. I am satisfied that there has been no waiver. Cf. Buffum v. Chase National Bank of *533 City of New York, 192 F.2d 58 (7 Cir. 1951), certiorari denied 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952); Leonardi v. Chase National Bank of City of New York, 81 F.2d 19 (2 Cir. 1936), certiorari denied 298 U.S. 677, 56 S.Ct. 941, 80 L.Ed. 1398.
Service of process on the three national bank defendants, must, accordingly, be quashed.

II.

THE ISSUE OF INDISPENSABILITY
Plaintiffs have taken the position that since Allied may only be sued in this jurisdiction, and because Allied is an indispensable party to any action brought to rescind the policy of insurance here in dispute, there are special circumstances which render the provisions of section 94 nonmandatory. On the other hand, defendant national banks and all of the other defendants contend that it is not initially true that Allied may only be sued in this State. They also contend that Allied and all endorsees are indispensable to any action for rescission, and thus the failure to join any one of them requires a dismissal of the action.
I need not decide whether as a matter of federal bankruptcy law, Allied may only sue or be sued within this State. This is so because, on the facts presented here, Allied is clearly not an indispensable party to any action brought by the endorsees to collect on the policy, or by any action by the companies to rescind an endorsement contract as distinguished by the main policy.
The contract of insurance presently under consideration must be regarded as sui generis. The basic policy was issued to Allied to cover risks incident to the storage of certain commodities in the warehouse at Bayonne, New Jersey. Each of the other defendants was interested in the commodities, either because it dealt with the commodities themselves, or loaned money and took warehouse receipts covering commodities as *534 securities for a financial transaction. In each case, however, a separate endorsement to the basic policy was issued.
As has been observed, plaintiff companies seek rescission as against Allied and all of the endorsees due to the alleged fraud, misrepresentation and breach of warranty of Allied. Defendant endorsees each take the position that even if Allied did engage in such conduct, it does not affect them because the rights of each are separate and distinct and not derivative of the policy issued to Allied. They claim an analogy to the "standard mortgagee" clause, common to fire insurance policies, as distinguished from a simple "loss payable" clause.
An indispensable party is one without whose presence no adequate judgment can be entered determining the rights of the parties before a court. R.R. 4:32-1. See, generally, 2 Schnitzer & Wildstein New Jersey Rules Service, A IV 955 et seq. (1958); 3 Moore's Federal Practice, §§ 1905 19.07 (2d ed. 1964). The distinction between "indispensable" parties and "necessary" parties, the latter being those who ought to be joined if complete relief is to be accorded those already parties to the litigation, was significantly enunciated by the Supreme Court in Shields v. Barrow, 15 How. 129, 58 U.S. 129, 15 L.Ed. 158 (1854):
"A bill to rescind a contract affords an example of [a controversy in which all parties to the contract are indispensable]. For, if only a part of those interested in the contract are before the court, a decree of rescission must either destroy the rights of those who are absent, or leave the contract in full force as respects them; while it is set aside, and the contracting parties restored to their former condition as to the others. We do not say that no case can arise in which this may be done; but it must be a case in which the rights of those before the court are completely separable from the rights of those absent, otherwise the latter are indispensable parties." (at pp. 139-140)
The particular nomenclature of necessary and indispensable party did not come into our practice until 1948. See former Rule 3:19-1. The essential differentiation is discernible in our former equity practice, although it must be gathered from what our courts did, rather than what they said, since "necessary" *535 was employed indiscriminately to embrace parties of both classes. In any suit the nature and character of the claims in action determine the identity and classification of parties. The object of the present action is to relieve plaintiffs from their duty to pay money to Allied and each of the endorsees who are party defendants. The means sought to be employed to reach this end is the equitable remedy of recission  recission not only of the main policy issued to Allied, but also of each of the separate endorsements issued to the other defendants herein. To justify their right to rescission, plaintiffs rely on the fraud of Allied. The ultimate issue then, is whether the rights of the endorsees under their contracts with plaintiffs are separate or derivative of the policy issued under Allied. As I have observed, defendants argue that their rights are separate. The question here, however, is whether, for the purposes of joinder of parties, the endorsement contracts are so separable from the main policy of insurance and from each other that the determination of the rights of the parties to each contract may take place even though Allied or any of the endorsees are not before the court.
There can be no doubt but that, as a general rule, all parties to and all those interested in a contract are indispensable to an action for its rescission. Shields v. Barrow, supra; 30A C.J.S. Equity § 143, p. 115; cf. Finley v. Factory, etc., Insurance Co. of America, 38 N.J. Super. 390 (Law Div. 1955); but see New England Mutual Life Ins. Co. v. Brandenberg, 8 F.R.D. 151 (S.D.N.Y. 1958). The general rule, as stated, is usually cited in reference to an integrated document or instrument, from which arise the rights and obligations of the parties to it. Here, each endorsement covers, essentially, the same risk, but each endorsee is in a different position vis-a-vis the insurance companies and the risks insured; each endorsement represents, therefore, a separate bargain entered into between the endorsee and the insurance companies. No party here could argue that in a suit by one endorsee to collect on a claim for loss which was *536 covered, all the other endorsees would have to be joined. Nor would Allied be an indispensable or even a necessary party to such an action (see 20A Appleman, Insurance Law & Practice, 145), even though the right to recovery might depend on a determination of whether Allied was guilty of fraud or other misconduct. See Allen B. Du Mont Labs, Inc. v. Marcalus Mfg. Co., 30 N.J. 290, 300 (1959). No logical distinction can be found where the situation is reversed and the insurer seeks to rescind; the facts to be decided and the issues are the same. Thus, if the insurers here sued a single endorsee in ordinary contract in a state which could have no jurisdiction over Allied, the suit should not be dismissed for failure to join Allied. Can there be any different result where more than one endorsee is sued and the court has no jurisdiction over Allied or some of the endorsees? I think not.
It must be remembered that this action seeks not only to rescind the main policy issued to Allied, but also each endorsement contract issued to other defendants herein. It seems that the issues to be decided with regard to each endorsee are distinct enough so that their individual interests may be said to be severable with respect to the relief sought by Allied and as against the other endorsees. As defendants themselves have pointed out, even if a breach of duty by Allied should be established, numerous additional issues are left to be decided, including whether such dereliction has any effect upon the separate endorsement holders. If it should be found that the rights of an endorsee are not derivative under the main policy issued to Allied, then the conduct of Allied or of any other endorsee would be irrelevant to the right of the endorsee to collect. If an endorsee's rights should be held to be derivative, then the conduct of any other endorsee is irrelevant to the right to collect, and although the conduct of Allied would be determinative, the presence of Allied would not be regarded as indispensable. Allen B. DuMont Labs, Inc. v. Marcalus, supra.
I conclude that the interest of each endorsee over whom this court has no jurisdiction is "separable from the parties *537 before the court so that the court can proceed to a decree, and do complete and final justice without affecting other persons not before the court * * *." Shields v. Barrow, supra. Accordingly, I determine that this case may proceed as against Allied and the endorsees over whom this court has established jurisdiction, even though the action must presently be dismissed as to the three national banks.

III.

APPLICATIONS OF IRVING TRUST COMPANY AND CONTINENTAL GRAIN COMPANY
Irving Trust Company (Irving) is a banking company organized and operating under the laws of the State of New York. Its principal office and place of business is located at No. 1 Wall Street, New York, New York.
The present action was instituted on November 16, 1964 by the filing of the complaint with the Clerk of the Superior Court. Purported service of summons and complaint upon Irving was effected on November 30, 1964 by the Sheriff of Mercer County delivering a copy of the summons and complaint to the Deputy Commissioner of Banking and Insurance of the State of New Jersey, at the State House Annex, Trenton, New Jersey.
There has been filed in the cause an affidavit of an officer of Irving which indicates that Irving is qualified pursuant to the New Jersey Banking Act of 1948 to transact business in New Jersey only as executor or testamentary trustee and guardian, and then only when named in a decedent's will or codicil thereto. N.J.S.A. 17:9A-316(B). Pursuant to N.J.S.A. 17:9A-318(5), Irving caused to be filed with the New Jersey Commissioner of Banking and Insurance a power of attorney which provided for the appointment of the Commissioner:
"* * * to accept service of process upon the said Irving Trust Company in any action or proceeding against it affecting or relating to any estate or trust administered under the laws of the State of New Jersey, *538 with respect to which it shall act in a fiduciary capacity only as executor or as testamentary trustee or guardian and then only when named in a decedent's will or codicil thereto."
Irving has never filed with the Commissioner of Banking and Insurance of this State, or with any other New Jersey official or agency, any consent to service or appointment of agent for acceptance of service other than as afore-mentioned.
On a motion made earlier in this cause I quashed the original service of process purportedly made by the Sheriff of Mercer County upon the Deputy Commissioner, because of the limited nature of the power of attorney granted to the Commissioner, the within action concededly not involving any of the activities covered under the power. Thereafter, during the late spring of 1965, attempt was again made to serve Irving, under the provisions of R.R. 4:4-4(d). Irving now moves to quash this service as well, on the ground that there has been insufficient minimal contact with the State and accordingly, service upon it as an absent defendant cannot be supported. In addition, Irving now contends that the provisions of the Banking Act of 1948 restricts actions against foreign banks to those arising out of flduciary activities.
I am satisfied that the latter argument, presenting the Banking Act of 1948 as a restrictive bar to actions against foreign banks, is devoid of merit. Irving contends that N.J.S.A. 17:9A-316(B) indicates the limited activities that a foreign bank may be engaged in in New Jersey, pursuant to a certificate of authority, without being in violation of N.J.S.A. 17:9A-316(A), which provides that no foreign bank organized under the laws of a foreign government shall transact business in this State. In addition, it is pointed out, foreign banks are permitted to engage in certain actions in New Jersey, which transactions are protected from the prohibition by the provisions of N.J.S.A. 17:9A-331. There is nothing, however, in the Banking Act of 1948, its history, or construction given by the courts which indicates that the Legislature intended, in any manner, to restrict suits against foreign *539 banking corporations arising out of nonfiduciary activities within this State. It seems to me that the argument of Irving can only have merit if we equate the minimal contacts-fundamental fairness concept with the old standard of "doing business." See McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
Irving next argues that the contacts which it has had with this State are, in any event, insufficient to support a finding that absentee service under the circumstances should be regarded as fundamentally fair. It seeks to demonstrate that the only activities in which Irving engages in New Jersey are those for which it is qualified, pursuant to the New Jersey Banking Act of 1948. That since this action does not relate to any estate or trust administered under our laws with respect to which Irving acts in a fiduciary capacity, service should not be sustained. By its own admission, however, it has engaged, on occasion in the past, in certain transactions authorized pursuant to the New Jersey Banking Act of 1948, which resulted in receiving security interests covering property located in New Jersey. Further, the record discloses that on April 15, 1965 Irving instituted an action against American Express Warehousing, Ltd. in this court, that action arising out of a transaction which gave rise to the insurance policy which is the subject matter of this action. Plaintiffs have communicated to the court by affidavit the result of their search of court dockets which discloses that, within the past ten years, Irving has instituted 14 actions against New Jersey residents in its individual capacity, involving general commercial transactions.
The Supreme Court of the United States, in International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), held that to subject a foreign corporation to a judgment in personam, where the corporation is not present within the territory of the forum, due process requires only that it have certain "minimum contacts with [the jurisdiction] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial *540 justice.'" The test of fundamental fairness, among other things, embodies an inquiry as to whether the activity of the foreign corporation with or in the jurisdiction in question is of the quality and nature, considering the fair and orderly administration of the laws which it was the purpose of the due process clause to insure, rather than to the quantum of such activity.
In McGee the court pointed out that the so-called fundamental fairness or fair play test has been evolved by the court because of its recognition of the fundamental transformation of our national economy over the years. As Justice Black pointed out:
"* * * Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." (355 U.S., at pp. 222, 223, 78 S.Ct., at p. 201)
The record before me indicates that, as a practical matter, Irving has had many contacts with this jurisdiction in the course of its carrying on its banking affairs. Physical location with respect to this vicinage, if not this State, is not remote. Inconvenience is not an issue. Many of its activities in the banking field involve or affect transactions of a commercial nature involving citizens and corporations of this State.
More particularly, the transaction which underlies the contract of insurance and endorsement which is the subject matter of this action, necessarily touched this State as well as New York. Modern concepts of due process require that courts view pragmatically the basic requirements of notice and opportunity to be heard when they determine in each case what should be regarded as traditional notions of fair play and substantial justice. In such a context, esoteric considerations, such as "corporate presence" and the like, should *541 be discarded as hindrances, rather than aids to the achievement of justice. No mystery exists here. Irving's activities in both the underlying transaction and the issuance of the policy endorsement have had significant effect upon citizens of this State. To require it to appear here may serve to frustrate its personal inclinations, but it must accept sublimation of such self-indulgence if it desires to continue in its activities as a major commercial entity. Certainly, the requirement that it answer and defend this action cannot, under these views, be found to violate the constitutional standard.
Irving next argues that in the event I should uphold the service of process on it, this court should stay the instant action as to it, because it has filed an action under the policy against plaintiffs herein in the Supreme Court of the State of New York; that the action so filed predated the instant action, and that, accordingly, this court should defer to the New York proceedings. Continental Grain Company joins in this application, based on the institution of similar New York proceedings.
Our decisions indicate that a stay of an action, like many other forms of preliminary injunction, is to be sparingly granted. Prudential Ins. Co. v. Merritt-Chapman, 112 N.J. Eq. 179 (Ch. 1933); Lindex Corporation v. Green, 62 A.2d 506 (Cty. Ct. 1948) (not officially reported). The basic applicable principle is that no stay is to be granted unless no hardship, prejudice or inconvenience would result to the one against whom the stay is sought. Gosschalk v. Gosschalk, 48 N.J. Super. 566, 579 (App. Div. 1958), affirmed 28 N.J. 73 (1958).
It has been brought to my attention, through various other motions brought by defendants in this cause, that several separate actions have been instituted in the courts of the State of New York on the policy of insurance which is the subject matter of this action. In all, a total of six separate proceedings has been instituted by the endorsees to the subject policy against plaintiffs herein. At lease two have gone to judgment, and those judgments have been appealed to the Appellate *542 Division of the Supreme Court of New York. As to the defendants herein who instituted those two actions which have gone to judgment, I have stayed this action.
Plaintiffs contend that the New York litigation is vexatious and constitutes harassment because of multiplicity. They argue that the proceedings in New York should be regarded as surplus in view of the instant action, in which complete relief can be granted as to all defendants. They also argue that at the present time jurisdiction can be obtained over Allied, as well as its employees and records, only in New Jersey. They contend that the policy of insurance in question involves a New Jersey insurance contract, and, therefore, should be construed by the courts of this State. This court is, frankly, not satisfied that there are any practical considerations which favor the institution of the New York actions against plaintiff insurance companies. Of course, there is nothing to bar the actions in either jurisdiction with respect to the parties interested in the present motion. I can see no good reason why the present action should be stayed as to defendants Irving and Continental Grain. If the New York action should go to judgment prior to this action's reaching that stage, of course, in the interests of comity, this court would entertain a further application to stay the within proceedings. Accordingly, the applications of Irving and Continental Grain for a stay of this action are denied without prejudice.
An order embodying the conclusions herein set forth may be submitted on notice or on consent.