The **FIRST NATIONAL BANK OF BOSTON, a National Banking corporation, Petitioner,**

v.

**UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF CALIFORNIA, Respondent;**
Jose A. NAVARRETE, Real Party in Interest.

No. 72-2049.

United States Court of Appeals, Ninth Circuit.

Sept. 28, 1972.

---

* Judge Gewin did not participate in the consideration of the Petition for Rehearing En Banc.

Fred F. Gregory, of Gibson, Dunn & Crutcher, Los Angeles, Cal., for petitioner.

Harry Pregerson, U. S. District Judge, Los Angeles, Cal., for respondent.

Jay S. Bulmash, of Kirsch & Arak, Beverly Hills, Cal., for the real party in interest.

Before CHAMBERS, MOORE* and MERRILL, Circuit Judges.

MOORE, Circuit Judge:

Petitioner, The First National Bank of Boston, a National Banking Corporation (the Bank), applies for a writ of mandamus directing a United States District Judge for the Central District of California to vacate and set aside his order denying Petitioner's motion to dismiss or in the alternative to transfer the case entitled, "Jose Navarrete, Plaintiff v. First National Bank of Boston, a National Banking Corporation, Defendant" to the United States District Court for the District of Massachusetts.[1]

---

* The Honorable Leonard P. Moore, Senior United States Circuit Judge of the Second Circuit, sitting by designation.

1. The complaint was filed in the United States District Court for the Central District of California. The Petitioner moved to dismiss or for a change of venue. The motion was denied.

First, it is essential to ascertain the nature of the Navarrete action.

For a First Cause of Action Navarrete alleges that he is a resident of Whittier, California; that the amount in controversy exceeds $10,000, and that the Bank has its principal place of business in Massachusetts but maintains an office for the transaction of business in Los Angeles County, California; that in January 1935 he was employed by the Bank in Havana, Cuba; that he never received any notice of termination of employment; that he did not resign; that the Bank had a Pension Plan for its employees, to wit, 70 percent of their highest monthly income (in Navarrete's case allegedly $1,100 a month); that on August 2, 1965, he became 65 years of age; that he is entitled to $770 a month since that date; that when he demanded such payments he was told that any retirement coverage was under a plan operated by the Cuban government which plan had been "confiscated by said government" in 1960 and that he could assert no rights against the Bank; and that he placed "trust and faith in said representations" which he did not discover to be false until 1971.

The Second Cause of Action alleges that on September 16, 1960, Navarrete was told by a "superior" Bank employee that all banks in Cuba were to be nationalized the next day; that despite his desire to flee he followed the instructions of the employee and remained but that since September 17, 1960, he has received no salary. He claims $61,000 as salary through May 1965.

The Third Cause of Action alleges false representations as to Navarrete's pension rights; that the representations were "wilful and malicious," and that he is entitled to exemplary damages of $250,-000.

It is unnecessary to decide whether any of the alleged causes of action validly states a claim. The recital of the allegations is solely for the purpose of revealing the nature of the claims, namely, a suit against a national bank by a former employee for compensation and damages from the Bank arising out of his alleged employment.

The only issue presented for decision upon this petition is whether the venue provision of 12 U.S.C. § 94 is mandatory with respect to this suit.

Section 94 provides that:

"Actions and proceedings against any association under this chapter [national banks] may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

The key word affecting federal court jurisdiction is "established." It is undisputed that the Bank was established in Boston, Massachusetts, and that its Head Office is located there. It also has a branch office in Los Angeles, California, where the complaint was served.

Despite the wording of the statute, Navarrete would have the judiciary graft an exception onto the statute by excluding therefrom a suit by an employee against a national bank for claimed wages and pension benefits and would limit it strictly to suits arising out of banking functions and dealings with bank customers.

Both the Supreme Court and this Circuit have rejected any such construction. Quite to the contrary the strict venue requirements imposed by Congress have been upheld.

In Mercantile Nat. Bank at Dallas v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963), two national banks were named as defendants, amongst others, in a case involving an alleged conspiracy to defraud an insurance company. It was argued that the venue provisions of the Insurance Code of Texas overrode section 94 of the National Banking Act. Even though the venue of the suit and the location of the banks differed only as between two counties

in the same state (Texas), the Supreme Court said:

"Thus, we find nothing in the statute, its history or the cases in this Court to support appellee's construction of this statute. On the contrary, all these sources convince us that the statute must be given a *mandatory* reading." 371 U.S. at 562, 83 S.Ct. at 524. (Emphasis supplied.)

A few weeks thereafter the Supreme Court denied jurisdiction in Nebraska in a suit against a Michigan national bank (for an alleged breach of the Nebraska Installment Loan Act) brought by purchasers of house trailers who had given notes to a dealer in Nebraska which had been negotiated with the national bank in Michigan. Michigan National Bank v. Robertson, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963).

This Circuit has recently had occasion to pass upon the jurisdiction requirements of Section 94 in the United States National Bank, etc., Petitioner v. Hon. Irving Hill, Respondent, et al., 434 F.2d 1019 (1970). There the petitioner, a national bank having its principal office and place of business in the Southern District of California, was sued in the federal court for the Central District of California. The petition to dismiss or transfer was denied. This court reversed, holding that a national bank can only be sued where "it maintained its principal place of business, even though it had 'branch business offices' in other states." *Id.* at 1020.

 The court said: "The overwhelming weight of authority, . . . supports the proposition that a national bank does not become 'established' or 'located' in any district wherein it may open and operate a branch office." (Citing cases.) And the court concluded: "[I]f the national banks and the courts are to be placed in that position, it must be the Congress that puts them there." *Id.* at 1020–1021.

This conclusion was also reached in Leonardi et ux. v. Chase Nat. Bank of City of New York, 81 F.2d 19, 21–22 (2d Cir. 1936); Bruns, Nordeman & Co. v. American National Bank & Trust Co., 394 F.2d 300, 302–304 (2d Cir. 1968); and Klein v. Bower, 421 F.2d 338, 342 (2d Cir. 1970).

In *Leonardi* the court, after reciting the history of the venue provision of the National Banking Act and cases thereunder, posed the question: "Is a national bank 'established' within each district in which it operates a branch bank?" It answered the question by saying: "This [referring to previous discussion] is sufficient authority to hold that a national bank is not 'established' in every district in which it has a branch bank." 81 F.2d at 21–22.

In *Klein, supra,* the court dismissed "for lack of venue," saying:

"Although the narrow venue of the National Bank Act imposes inconveniences on plaintiffs, especially in cases of multiple defendants, the remedy for the situation must be provided by Congress." 421 F.2d at 342.

As to the claim that the venue section applies only to banking operations, the court in *Leonardi* said:

"Nothing in the original act implied that this section was to apply to any particular type of proceeding. . . . The Supreme Court has intimated that it does not regard the section as so restricted." 81 F.2d at 21.

 Nor is the type of action relevant to the jurisdictional question with the possible exception of suits concerning real property. *See e. g.,* Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52 (1880). Tort, fraud, breach of contract, securities fraud, and construction of insurance policy claims, all have been held to be within the coverage of the statute. Ebeling v. Continental Illinois National Bank & Trust Company of Chicago, 272 Cal.App.2d 724, 77 Cal.Rptr. 612 (1969); Mercantile National Bank, *supra;* Buffum v. Chase National Bank of City of New York, 192 F.2d 58 (7th Cir. 1951); Bruns, Nordeman, *supra;* Insurance Co. of North America v. Allied Crude Veg-

**184**

etable Oil Refining Corp., 89 N.J.Super. 518, 215 A.2d 579 (1965).

 Equally irrelevant to the application of Section 94 is possible inconvenience to the litigants. Klein v. Bower, *supra*, 421 F.2d at 342. Nor are cases, in which national banks have voluntarily undertaken to act as executors and trustees, applicable. The present case, essentially for breach of contract, is clearly within the purview of the venue statute.

The Petition for Writ of Mandamus is granted and the District Court's order of May 18, 1972, is vacated. If the District Judge deems it appropriate, he may order that the cause, in its entirety, be transferred to the District of Massachusetts; otherwise the suit, as against the Petitioner, must be dismissed for want of jurisdiction. *Hill, supra*, 434 F.2d at 1021.