**AETNA CASUALTY & SURETY COMPANY**

v.

**James W. GRAVES et al., Whitney National Bank and First National Bank of Commerce, Garnishees.**

**Civ. A. No. 74–21.**

United States District Court,
W. D. Louisiana,
Monroe Division.

Sept. 25, 1974.

Henry B. Bruser, III, Gold, Hall, Hammill & Little, Alexandria, La., for plaintiff.

Lloyd F. Love, Ferriday, La., for Purser Raburn.

Burt W. Sperry, Shotwell, Brown & Sperry, Monroe, La., for Tennessee Life Ins. Co.

Roy S. Halcomb, Halcomb & Cole, Ferriday, La., for United Furniture Co. of Ferriday.

John M. Sturgeon, Jr., Sturgeon & Gore, Ferriday, La., for M. P. Brann.

George L. Wax, Dart & Dart, New Orleans, La., for First Nat. Bank of Commerce.

Walter J. Suthon, III, Monroe & Lemann, New Orleans, La., for Whitney Nat. Bank of New Orleans.

DAWKINS, Senior District Judge.

## RULING ON PENDING MOTIONS

Plaintiff, an insurance company incorporated under the laws of Connecticut, with its principal place of business there, has filed an action in this Court against James W. Graves and twelve other defendants, none of whom are citizens of Connecticut, to recover $288,576.09, a sum which it was required to pay pursuant to a fidelity bond issued by it to insure Delta Security Bank & Trust Company of Ferriday, Louisana (Delta Bank), against losses arising out of employee theft and dishonesty.

Plaintiff alleges that an audit of Delta Bank in January of 1973 disclosed that substantial losses had been suffered by that bank due to theft of bank funds by Graves. Plaintiff further alleges that, as a result of the losses mentioned, Delta Bank was closed and placed in liquidation; the Federal Deposit Insurance Corporation then called upon plaintiff for payment under its fidelity bond, resulting in the $288,576.09 payment mentioned. Upon receiving the sum demanded, F.D.I.C. transferred and assigned to plaintiff all of F.D.I.C.'s rights and claims against all persons arising from the losses mentioned.

Plaintiff contends that defendant Tennessee Life Insurance Company (Tennessee), a Texas corporation, received $1,692.00 of the monies allegedly misappropriated by Graves and that Banco Mexicano (whose account at Whitney National Bank of New Orleans, Louisiana (Whitney), has been garnished under a writ of nonresident attachment) erroneously and negligently released $100,000.00 of Delta's funds to James Graves and/or Deborah Graves. Plaintiff thus has named Tennessee and Banco Mexicano defendants in this matter, and, under a writ of nonresident attachment, has attached any assets of Banco Mexicano held by Whitney.

In its present posture, this matter is before us on motions by garnishee Whitney and defendant Tennessee. Whitney has moved to quash and vacate the garnishment served upon it and to dismiss the proceeding against it. Tennessee's motion alleges that this Court lacks sub-

ject matter jurisdiction as to the plaintiff's claim against it and prays for dismissal from this action.

We turn first to consideration of Whitney's motion.

### Whitney's Motion to Quash and Vacate Writ of Attachment and to Dismiss Garnishment

Plaintiff, believing Whitney to be indebted to or in possession of assets belonging to the nonresident defendant Banco Mexicano, in order to obtain jurisdiction over that bank,[1] caused a garnishment under writ of nonresident attachment to issue, citing Whitney as garnishee. Thus Whitney is *not a party* defendant in the principal action brought by plaintiff; it merely is garnishee under the writ. Notwithstanding, Whitney has moved to quash the attachment and to dismiss the garnishment on the following grounds: (1) improper venue as to Whitney; (2) alternatively, insufficient service of process; (3) in the further alternative, lack of subject matter and *in personam* jurisdiction.

We turn first to the claim of improper venue. Whitney's first, and most substantial, ground in support of its contention as to improper venue is that under the provisions of the National Banking Act, 12 U.S.C. § 94, proper venue of an action or proceeding in a federal district court against a national bank is the judicial district in which the bank is established.[2] Since Whitney is a national bank with its principal place of business in the Eastern District of Louisiana (New Orleans), if this mandatory[3] venue provision is applicable to the cir-

cumstances here, we must grant Whitney's motion.

However, the narrow issue presented is whether a mere garnishment, under a writ of nonresident attachment, is an action or proceeding against a national bank, within the meaning of § 94. Both plaintiff's and Whitney's briefs, as well as our own research, indicate that this is an issue of first impression.

Section 94 is a horse-and-buggy statute in a supersonic age. It has been a part of the United States Code for almost a century, even though we long since have moved into an age of high-speed mobility. This section apparently was enacted by Congress for the convenience of national banking institutions and "to prevent interruption in their business that might result from their books being sent to distant counties in obedience to process from state courts." (Citations omitted.) First National Bank of Charlotte v. Morgan (1889) 132 U.S. 141, 145, 10 S.Ct. 37, 38, 33 L.Ed. 282; *Mercantile National Bank*; Northside Iron & Metal Co., Inc. v. Dobson and Johnson, Inc., 480 F.2d 798 (5th Cir., 1973). Despite the anachronistic nature of § 94, if Congress intended that it should apply where, as here, a national bank's sole connection with the principal action is as garnishee under foreign attachment, required merely to answer garnishment interrogatories propounded by plaintiff, we must hold that § 94 applies (this is so even though defendant Banco Mexicano has neither answered nor objected to venue). Nevertheless, we are of the firm opinion that to hold that § 94 applies here would be

1. La.C.Civ.Proc. art. 9.

2. 12 U.S.C. § 94 provides:
   "Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court

   in the county or city in which said association is located having jurisdiction in similar cases."

3. Mercantile National Bank v. Langdeau (1963) 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523; Michigan National Bank v. Robertson (1963) 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961.

to give a liberal, expansive interpretation to that statute and we strongly are not inclined to do so. We cannot say that it would be more inconvenient for Whitney to send its garnishment answers to this Court in the Western District of Louisiana than to send the same material to a District Court in the Eastern District; and we seriously doubt that Whitney's operations will come to a screeching halt if it is required to answer plaintiff's garnishment interrogatories. Congress could not have intended § 94 to apply in the circumstances here presented. We, therefore, hold that § 94 does not apply to this action.

Whitney alternatively argues that venue is improper because, under Louisiana law, venue in a garnishment proceeding, under writ of foreign attachment, would be in the Parish of Orleans, in the Eastern District of Louisiana. We do not decide this question because it properly is an objection for defendant Banco Mexicano to make through its counsel, not through counsel for the garnishee. We, therefore, pretermit decision upon this issue until such time as it properly may be presented to us. Moreover, Whitney's objections of insufficient service of process and lack of subject matter and personal jurisdiction are also matters which properly should be asserted by Banco Mexicano, not Whitney.

For the reasons given, Whitney's motion to quash the garnishment under writ of foreign attachment hereby is denied.

### Tennessee's Motion to Dismiss for Lack of Jurisdiction

Plaintiff seeks to join Graves and Tennessee as defendants in this action. Assuming that joinder is permissible under Rule 20(a) F.R.Civ.P. under the circumstances alleged by plaintiff, we still must have subject matter jurisdiction over the claims against each defendant. Tennessee contends that we lack subject matter jurisdiction as to plaintiff's claim against it because the "amount in

controversy" is less than $10,000. Plaintiff opposes Tennessee's motion, contending that the claim against the latter may be aggregated with the claim against Graves to attain the jurisdictional amount required. For the reasons given below, we hold that we do have subject matter jurisdiction over the claim against Tennessee.

Plaintiff's complaint alleges that defendants Graves and Tennessee are liable *in solido, i. e.,* jointly and severally (Louisiana Civil Code Articles 2091 et seq.) to it as assignee of F.D.I.C., for the sum of $1,692.00, which was paid by Graves to Tennessee for premiums on a life insurance policy. Payment allegedly was made by means of a counter check drawn by Graves on Delta Bank to the order of Tennessee. Plaintiff claims that the check was drawn without the bank's authorization, either express or implied; in short, plaintiff alleges that Graves paid his debt to Tennessee with stolen funds. Thus, plaintiff claims Graves, who allegedly misappropriated bank funds, and Tennessee, recipient of the funds in payment of an antecedent debt,[4] are solidarily liable for return of the money. We now turn to consideration of whether, under the circumstances here presented, plaintiff may aggregate his claims against these two defendants to obtain jurisdiction over Tennessee, whose alleged joint liability is for less than $10,000.

■■ We are aware that under most circumstances the Supreme Court does not favor aggregation of claims on behalf of multiple plaintiffs or against multiple defendants to determine the amount in controversy. Zahn v. International Paper Co. (1973) 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511; Snyder v. Harris (1969) 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319. We also realize that the rules on aggregation of claims to satisfy the requirements of minimum amount in controversy " . . . turn on a mystifying conceptual test."

---

4. . It is not clear from plaintiff's complaint whether plaintiff believes that defendant

Tennessee received the counter check in good faith.

Wright, Law of Federal Courts, § 36, p. 121.

 While a single plaintiff may aggregate all claims he holds against a single defendant to determine the amount in controversy, Crawford v. Neal (1892) 144 U.S. 585, 12 S.Ct. 759, 36 L.Ed. 552; Pearson v. National Society of Public Accountants, 200 F.2d 897 (5th Cir., 1953); Wright, *supra*, § 78: "[c]laims against two or more defendants can be aggregated for the purpose of obtaining jurisdictional amount, as a general proposition, [only] if they are jointly liable to the plaintiff." Jewell v. Grain Dealers Mutual Insurance Company, 290 F.2d 11, 13 (5th Cir., 1961); McDaniel v. Traylor (1905) 196 U.S. 415, 25 S.Ct. 369, 49 L.Ed. 533; Sovereign Camp Woodmen of the World v. O'Neill (1924) 266 U.S. 292, 45 S.Ct. 49, 69 L.Ed. 293. Where liability is several, aggregation has not been permitted. Walter v. Northeastern Railway Company (1893) 147 U.S. 370, 13 S.Ct. 348, 37 L.Ed. 206; Alvarez v. Pan-American Life Insurance Company, 375 F.2d 992 (5th Cir., 1967); Dendinger v. Maryland Casualty Company, 302 F.2d 850 (5th Cir., 1962); *Jewell, supra*.[5]

Under the rules thus set forth, it appears to us that where, as here, plaintiff alleges in good faith that defendants are jointly and severally liable to it upon a debt, aggregation to determine the amount in controversy is permissible. Aggregation of all of plaintiff's claims against Tennessee and Graves results in an amount in controversy far exceeding the statutory requirement of 28 U.S.C. § 1332. Consequently, we hold that we have subject matter jurisdiction over the claim against Tennessee. Accordingly, Tennessee's motion to dismiss hereby is denied.

---

5. Some courts have applied the concept of ancillary jurisdiction in allowing aggregation to attain jurisdictional amount where "claims are closely related and arise for the most part out of the same operative facts." See Wright, *supra*, § 37, p. 124, and cases cited therein. Notwithstanding the beneficial effect on the administration of justice of such a rule, which, among other things, helps curtail piecemeal and multiple litigation of cases arising out of the same or similar factual circumstances, we are of the opinion that such is not the law. See *Zahn, supra*; *Snyder, supra*. Yet even under these cases, given the alleged solidary liability of defendants to plaintiff, this may be a proper case for application of the doctrine of ancillary jurisdiction to attain jurisdictional amount. However, since we hold that aggregation is permissible under another theory, it is not necessary for us to wind our way through the court-built maze of ancillary jurisdiction to determine whether it applies here.