**INTERNATIONAL TRAVELERS CHEQUE COMPANY, Plaintiff-Appellant,**

v.

**BANKAMERICA CORPORATION and Bank of America National Trust and Savings Association, Defendants-Appellees.**

No. 80–2749.

United States Court of Appeals, Seventh Circuit.

Argued May 26, 1981.

Decided Aug. 26, 1981.

James T. Fitzgibbon, Fitzgibbon, Roehrig, Greenawalt & Gilhooly, Chicago, Ill., for plaintiff-appellant.

Michael A. Reiter, Katten, Muchin, Zavis, Pearl, Chicago, Ill., for defendants-appellees.

Before SWYGERT,* Senior Circuit Judge, and SPRECHER, Circuit Judge, and and THOMAS,** Senior District Judge.

SPRECHER, Circuit Judge.

This case stems from the opposition by a national bank, which sells travelers' checks, to an attempt by a competing corporation, which also sells travelers' checks, to register before the Patent and Trademark Office the term "International Travelers Cheque."

After the bank successfully opposed the registration in proceedings before the Patent and Trademark Office, the corporation appealed by suing the bank and its holding company in the U. S. District Court for the Northern District of Illinois. But the suit was not in the district where the bank was established, as required by the National Bank Act. Rejecting the plaintiff's arguments that the bank waived the venue provisions of the Act, we conclude that the plaintiff's suit must be dismissed for improper venue. Second, we reject the plaintiff's argument that the venue provision of the National Bank Act does not cover the business of selling travelers' checks.

After the suit against the bank was dismissed, the suit against the holding company was dismissed for failure to join the bank, an indispensable party. Since the plaintiff conceded in district court that the bank was an indispensable party, we decline to now consider the plaintiff's argument that the bank is not an indispensable party. Therefore, we affirm the dismissal of the suit against the holding company.

I

The plaintiff, International Travelers Cheque Company ("International"), is a one-person corporation located in Chicago. In 1976, International filed an application with the United States Patent and Trademark Office to register the term, "International Travelers Cheque." The defendants, Bank of America National Trust and Savings Association ("Bank of America") and BankAmerica Corporation ("BAC"), filed a notice of opposition to International's application before the Patent and Trademark Office on the ground that the term was inherently nonregistrable. The defendants also alleged that each of them would be harmed by International's registration of the term. Bank of America, a California corporation, is a national bank headquartered in San Francisco. BAC, a Delaware

* At the time of oral argument Judge Swygert was a circuit judge in active service; he assumed senior status on July 1, 1981.

** Honorable Daniel Holcombe Thomas, Senior District Judge for the Southern District of Alabama, is sitting by designation.

corporation, is a one-bank holding company, its principal subsidiary being Bank of America.

The Trademark Trial and Appeal Board of the Patent and Trademark Office refused registration of the term "International Travelers Cheque" on the ground that the term was merely descriptive of International's financial services. Upon a request for reconsideration, the Trademark Trial and Appeal Board affirmed its earlier decision. Rather than taking an appeal to the United States Court of Customs and Patent Appeals, International elected to file a civil action against the defendants in district court, choosing the Northern District of Illinois.

After International had obtained service upon Bank of America, Bank of America filed a motion to dismiss the complaint for improper venue. The district court granted this motion, holding that under the venue provision of the National Bank Act, 12 U.S.C. § 94 ("Act"), a national bank is amenable to suit only in the district in which it is established, here, the Northern District of California. On reconsideration, the district court refused to vacate its order dismissing the Bank of America.

International then obtained service upon BAC. BAC filed a motion to dismiss on four alternative grounds, including the failure to join Bank of America as an indispensable party. The district court granted the motion to dismiss on the latter ground, relying on International's concession in its answer to that motion that Bank of America was an indispensable party to the action against BAC.

From these orders dismissing first Bank of America and then BAC, International now appeals to this Court. First, International argues that Bank of America waived its rights under the venue provision of the Act. Second, International argues that the venue provision of the Act does not apply to litigation involving the business of selling travelers' checks. Third, International argues that Bank of America is not an indispensable party.

## II

■ We consider first International's argument that Bank of America waived its venue rights under the Act.[1] The Act provides that a national bank can be sued only where it is established or located.[2] It is true that the venue provision of the Act has been severely criticized. *See, e. g., Aetna Cas. & Surety Co. v. Graves*, 381 F.Supp. 1159, 1161 (W.D.La.1974) ("Section 94 is a horse-and-buggy statute in a supersonic age."); 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure § 3813, 82–83 (§ 94 is "archaic" and has created a "wholly unsatisfactory state of affairs"). Nevertheless, the Supreme Court has clearly stated that any harsh results created from the application of § 94 are not for the courts, but "for Congress to consider." *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 563, 83 S.Ct. 520, 525, 9 L.Ed.2d 523 (1963).

Since the Bank of America is established in the Northern District of California,[3] it

---

1. 12 U.S.C. § 94 provides as follows:
   Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any state, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases.

2. Although the Act uses the word "may", the Supreme Court has held that the language is mandatory:
   The phrase "suits ... may be had" was, in every respect, appropriate language for the purpose of specifying the precise courts in which Congress consented to have national

banks subject to suit and we believe Congress intended that in those courts alone could a national bank be sued against its will. *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 560, 83 S.Ct. 520, 523, 9 L.Ed.2d 523 (1963).

3. The general rule is that "the place specified in a bank's charter as its home office is determinative of the district in which the bank is 'established' for purposes of § 94." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 151 n.2, 96 S.Ct. 1989, 1992 n.2, 48 L.Ed.2d 540 (1976).

cannot be sued in the Northern District of Illinois unless it has waived or otherwise lost its rights under § 94. *See Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 158, 96 S.Ct. 1989, 1995, 48 L.Ed.2d 540 (1976) ("specific venue provision of the National Bank Act must prevail over the broader, more generally applicable venue provision of the Securities Exchange Act")[4] and *Langdeau,* 371 U.S. at 559–60, 83 S.Ct. at 522–23.

The basic theory of International's appeal is that, because Bank of America opposed International's attempted registration of the term before the Trademark Trial and Appeal Board, Bank of America should be found to have waived or otherwise lost its rights under the Act. International does not clearly delineate its waiver arguments, but it seems to make two general arguments. First, it seems to argue that Bank of America should be found to have lost the protections of the Act because, although Bank of America became a defendant in district court, its "real" role was more like that of a plaintiff. Second, International seems to argue that Bank of America's opposition before the Trademark Trial and Appeal Board constituted a waiver of the venue provisions of the Act.

## A

First, International argues that Bank of America knew, when it filed its opposition, that the trademark statutes call for the prevailing party in an opposition proceeding to become a defendant in an appeal to the district court and that, thus, Bank of America forced International to become a plaintiff in district court. International argues that Bank of America was "really" a constructive plaintiff, however, since its presence in district court results from the *Bank's* actions determining the status of the parties. We reject this argument. Although it is true that, in the district court action, International became the plaintiff and Bank of America became a defendant, that fact does not warrant causing Bank of America to lose venue rights under § 94 for two reasons.

First, a person dissatisfied with a decision of the Trademark Trial and Appeal Board may pursue two alternative routes of appeal. On the one hand, the person may appeal to the Court of Customs and Patent Appeals pursuant to 15 U.S.C. § 1071(a).[5] The review by the Court of Customs and Patent Appeals is not a review de novo but is limited to a review of the evidence produced before the Patent and Trademark Office.[6] On the other hand, a dissatisfied applicant may receive a trial de novo by filing a civil action pursuant to 15 U.S.C. § 1071(b)(1).[7] Contrary to International's implication, it was not forced into district

4. In *Radzanower,* Justice Stevens wrote a compelling dissent, reasoning that the Act should not be read to prevail over the Securities Exchange Act. 426 U.S. at 162–63, 96 S.Ct. at 1997. But albeit compelling, his dissent was not persuasive; the Court's vote was 8 to 1. Such a strong majority in the face of a clear and powerful dissent indicates the Court's emphatic acceptance of the theory that the venue provisions of the Act control over the venue provisions of more generally applicable statutes. Thus, although *Radzanower* involved a conflict between the Act and the Securities Exchange Act, the Court's reasoning strongly suggests the same result in a conflict between the Act and the general venue statutes.

5. 15 U.S.C. § 1071(a)(1) provides in pertinent part:

An applicant for registration of a mark . . . who is dissatisfied with the decision of the Commissioner or Trademark Trial and Appeal Board, may appeal to the United States

Court of Customs and Patent Appeals thereby waiving his right to proceed under subsection (b) of this section . . . .

6. 15 U.S.C. § 1071(a)(4) provides:

The court shall decide such appeal on the evidence produced before the Patent and Trademark Office. The court shall return to the Commissioner a certificate of its proceedings and decision, which shall be entered of record in the Patent and Trademark Office and govern further proceedings in the case.

7. 15 U.S.C. § 1071(b)(1) provides in pertinent part:

Whenever a person authorized by subsection (a) of this section to appeal to the United States Court of Customs and Patent Appeals is dissatisfied with the decision of the Commissioner or Trademark Trial and Appeal Board, said person may, unless appeal has been taken to said Court of Customs and Patent Appeals, have remedy by a civil action

court in order to appeal. International had the choice of pursuing an appeal on the previous record in the Court of Customs and Patent Appeals or pursuing a trial de novo in district court; it chose trial de novo in district court.

But International's theory also fails for an even more important reason. Even if we assume, arguendo, that there would be some unfairness in finding that International "chose" to sue in district court, the question before us remains in *which* district court venue lies. As we have discussed, the Act settles this question by providing that a national bank can only be sued in the district in which it is established.

International argues, however, that when a national bank, although nominally a defendant, is in reality a plaintiff, the Act's venue provision relating to a bank as a *defendant* should not apply. International relies on *E. & J. Gallo Winery v. Candelmo*, 192 USPQ 210 (D.D.C.1976), for the proposition that when district court proceedings are the direct result of an opposer's earlier opposition to a trademark registration, the "plaintiff" is in reality a "defendant". It argues that, thus, Bank of America is a constructive plaintiff and, as such, has waived the provisions of the Act. Because the *Candelmo* decision, at first glance, seems to offer some support to International, it is important to analyze that decision with precision.

In *Candelmo*, Candelmo, a resident of Connecticut, successfully opposed Gallo, a California winery, seeking a trademark registration before the Trademark Trial and Appeal Board. Gallo then appealed to the Court of Customs and Patent Appeals. Candelmo then elected to proceed via civil action in district court.[8] Candelmo's election thus required Gallo to sue in district court; Gallo sued in the district of the District of Columbia. Candelmo then moved for dismissal on grounds of improper venue under the general venue statutes which provide that, in non-diversity cases, venue is proper only where all the defendants reside or where the claim arose. 28 U.S.C. § 1391(b).

In *Candelmo*, it was undisputed that Candelmo, the defendant, resided in Connecticut and it was not argued that Gallo should be considered a "defendant" for venue purposes in order to allow suit in California. Thus, the question became whether the claim "arose", within the meaning of the venue statute, in Connecticut or in the District of Columbia. If the claim arose in Connecticut, then Gallo's attempt to sue in the District of Columbia would fail, but if the claim arose in the District of Columbia, then Gallo's appeal could proceed there.

Candelmo argued that his business was located in Connecticut, that Gallo's registration would cause injury to his business, and that, therefore, the claim arose in Connecticut. Gallo argued that its "claim" was an appeal of the Trademark Trial and Appeal Board, located in the District,[9] and that, therefore, its claim arose in the District.

The *Candelmo* court noted that, ordinarily, the general rule was that a commercial tort claim "arose" where the *plaintiff's* business suffered injury. The problem was that Candelmo was a nominal defendant,

.... The court may adjudge that an applicant is entitled to a registration upon the application involved, that a registration involved shall be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear. Such adjudication shall authorize the Commissioner to take any necessary action, upon compliance with the requirements of the law.

**8.** 15 U.S.C. § 1071(a)(1) provides that if a dissatisfied applicant appeals from the Trademark Trial and Appeal Board to the Court of Customs and Patent Appeals, an adverse party may elect to have all further proceedings con-

ducted according to the "civil remedy" in district court afforded by 15 U.S.C. § 1071(b).

**9.** The district court apparently assumed without deciding that the Trademark Trial and Appeal Board was located in the District. 192 USPQ at 212. International states, without citation or proffer of evidence, that the Patent Office is nominally located in the District of Columbia but actually located in Arlington, Virginia. Even if this is true, we assume arguendo that the Patent Office and the Trademark Trial and Appeal Board are legally located for venue purposes in the District of Columbia. This fact is not critical to any of the issues on appeal.

not a plaintiff. But the court reasoned that, *for the purpose of determining the injured party*, Candelmo was a constructive plaintiff. The action before it, the district court concluded, was the continuation of an administrative proceeding in which Candelmo alleged injury if Gallo received its registration and Candelmo sought the remedy of denying that registration. Moreover, the court concluded that Congress did not intend for venue to lie in the District of Columbia for all appeals from the Trademark Trial and Appeal Board. Thus, the court concluded that the claim before it arose in Connecticut. But the *Candelmo* decision does not help International.

First, the *Candelmo* conclusion that the opposer of registration was a constructive plaintiff was made with regard to the traditional tort injury test of where a claim arises, a judicial case-law standard, and not with regard to waiver of a statutory venue requirement, as in the Act. In *Candelmo*, the only alternative to finding that the claim arose in Connecticut would have been a finding that all appeals from the Trademark Trial and Appeal Board "arise" in the District of Columbia. As has been discussed, the court rejected such a finding. In so doing, the *Candelmo* court had broad flexibility in interpreting judge-made law and it also achieved an important policy goal in its result.[10]

Second, although we do not quarrel with the *Candelmo* result, we do not agree with all that the *Candelmo* court wrote. The *Candelmo* court could have achieved the proper result—venue in the district of injury rather than the district of appeal—more narrowly and in a more principled manner by concluding that the commercial tort test could apply to defendants in some cases, rather than concluding that Candelmo was a constructive plaintiff. Although it was

true, as the *Candelmo* court concluded, that the district court proceeding was the culmination of an administrative proceeding in which Candelmo was in the position of "plaintiff", it was not true, as the *Candelmo* court implied, that the district court proceeding was the only possible culmination of the administrative proceedings. Perhaps if Candelmo had been forced into district court, it would have been unfair to dismiss the case on venue grounds. But Candelmo was not forced into district court. Rather, Gallo had appealed to the Court of Customs and Patent Appeals and Candelmo then forced Gallo into district court.

In the case before us, International argues that it was somehow forced into district court by Bank of America. But, as discussed above, this suggestion is incorrect for several reasons. First, International was not forced to do anything. Unlike Candelmo, who at least was forced to defend an appeal, International is here the appellant; it chose to appeal. Second, International chose to appeal to district court; it could have appealed to the Court of Customs and Patent Appeals. Third, International chose the Northern District of Illinois; it could have appealed to the district court in the Northern District of California. Thus, we reject International's argument.

**B**

International's next argument seems to be that, even if it was not forced into district court, Bank of America's mere opposition before the Trademark Trial and Appeal Board operated to effect a waiver of Bank of America's venue rights under the Act for any subsequent appeals arising from its initial opposition. The venue protections of the Act, of course, can be waived. *Radzanower*, 426 U.S. at 151 n.3,

---

**10.** The traditional test regarding where a commercial claim arose was that it arose at the place of business of the person claiming injury. In *Candelmo*, there was no question as to *who* was claiming injury and no question as to *whether* there had been an injury. Thus, the court found that Candelmo met all the tests traditionally associated with a commercial tort. In *Candelmo*, the real venue issue was between

the place where the injury to the business occurred versus the place of appeal. That the owner of the injured business was a nominal defendant did not seriously affect the test of the competing locations: place of injury versus place of appeal. Thus, the court concluded that the business could be seen as a constructive plaintiff *for purposes of the commercial tort test.*

96 S.Ct. at 1992 n.3. But the cases finding waiver have involved situations where a bank, having a choice of jurisdictions in which to sue, sued in a state or county other than the one in which it was established and then a subsequent action directly related to the bank's action was brought against the bank in the *same* district in which the bank brought the initial action. As will be discussed, the facts of this case are not similar to the facts of the cases finding waiver. First, Bank of America had no choice regarding where it could bring its action to oppose International's trademark registration. Second, International's subsequent appeal was not taken in the same district in which the bank lodged its opposition.

First, the Trademark Trial and Appeal Board, located in the District of Columbia, was the only forum in which Bank of America could bring its opposition proceeding. The Lanham Act, 15 U.S.C. § 1063, provides that opposition to a registration be filed in the Patent and Trademark Office, located in the District of Columbia.[11] 15 U.S.C. § 1067 then specifies that an opposition to registration be heard by the Trademark Trial and Appeal Board, also located in the District of Columbia.[12] It would be unreasonable to hold that a national bank must be caught between the Scylla of abandoning its rights to protect a registration which, if allowed, could cause damage to its business, and the Charybdis of losing its venue rights under the Act.

**11.** 15 U.S.C. § 1063 provides in pertinent part:
Any person who believes that he would be damaged by the registration of a mark upon the principal register may, upon payment of the required fee, file a verified opposition in the Patent Office, stating the grounds therefor, within thirty days after the publication under subsection (a) of section 1062 of this title of the mark sought to be registered.

**12.** 15 U.S.C. § 1067 provides in pertinent part:
In every case of interference, opposition to registration, application to register as a lawful concurrent user, or application to cancel the registration of a mark, the Commissioner shall give notice to all parties and shall direct a Trademark Trial and Appeal Board to determine and decide the respective rights of registration.

Second, in cases where waiver has been found, the subsequent suit was in the same location where the bank began the initial proceeding and the subsequent suit directly concerned the bank's involvement in the first proceeding. In *Stinnett v. Third Nat'l Bank of Hampden Co.*, 443 F.Supp. 1014 (D.Minn.1978), relied on by International, a Massachusetts National Bank sued Stinnett in a Minnesota state court. After settlement, Stinnett then sued the bank for defamation regarding items in the bank's original complaint which allegedly defamed him. Although emphasizing that the mere initiation of the bank's Minnesota suit was not a general waiver of the Act's protections, the court concluded that, because Stinnett's defamation suit concerned the bank's conduct in the bank's suit in the same state, the bank could no longer avail itself of the Act's protection.[13]

International also relies on two Texas state court cases finding waiver of the venue protections of the Act, but those cases are similarly inapposite. In both *Western Nat'l Bank of Amarillo v. Hix*, 553 S.W.2d 859 (Tex.Civ.App.1976), and *Fort Worth Nat'l Bank v. Stiff*, 482 S.W.2d 337 (Tex. Civ.App.1972), *cert. denied*, 410 U.S. 932, 93 S.Ct. 1375, 35 L.Ed.2d 594 (1973), a national bank sued a person outside of its district of establishment; the defendant in each case then counter filed a cross-action in the same district regarding the same suit. The Texas courts properly concluded that the national banks waived the Act's venue protections with regard to valid cross-actions or coun-

**13.** The *Stinnett* court stated:
The Court agrees that initiation of suit in a foreign jurisdiction should not be construed as a general waiver by a national bank of its right to be sued where it is established. But waiver may be found where the action against a national bank is brought by a defendant in litigation the bank pursued in the jurisdiction and concerns causes of action that arise directly from the bank's suit. By undertaking litigation, the bank avails itself of the benefits, procedures, and protections of the foreign jurisdiction. To the extent the bank abuses these privileges, it should be held to answer in the courts in that state.
443 F.Supp. at 1017.

terclaims. *See also Exchange Nat'l Bank of Chicago v. Abramson*, 45 F.R.D. 97, 105–07 (D.Minn.1968), and *First Nat'l Bank and Trust Co. in Macon v. American Security & Trust Co.*, 25 F.R.Serv.2d 279, 280 (D.D.C. 1977). (In each case, a national bank sued outside of the district in which it was located; the defendant filed a counterclaim in the same foreign jurisdiction regarding the same action; both courts found the bank waived the venue protections of the Act.) But the case before us involves subsequent proceedings in *another* district, not the same district. Therefore, International's cases do not support a finding of waiver in this case.[14]

## C

■ Not only do International's cases and authorities not support its theory of waiver, but also, International has failed to make a factual showing of waiver. The party relying on a waiver theory has a heavy burden of establishing specific facts to show that a national bank waived its rights under the venue provisions of the Act. As we stated in *Buffum v. Chase Nat'l Bank*, 192 F.2d 58, 60–61 (7th Cir. 1951), *cert. denied* 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952):

> Waiver is a voluntary and intentional relinquishment or abandonment of a known existing right or privilege, which, except for such waiver, would have been enjoyed. . . . It must be proved by the party relying upon it. And if the only proof of intention to waive rests on what a party does or forbears to do, his act or omissions to act should be *so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of his conduct is possible.*

(emphasis added). *See also Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1970) ("Plaintiff has the burden of establishing proper venue.").

Here, as has been discussed, Bank of America could only oppose International's proposed registration before the Patent and Trademark Office in the District of Columbia. Its opposition there can hardly suggest that "no reasonable explanation," other than intent to waive the venue protection of the Act, *Buffum*, 192 F.2d at 60–61, is possible. International proffers no other evidence regarding intent to waiver. Thus, we conclude that International has not met its burden to show waiver.

## III

■ International next argues, without citation of any authority, that the venue

14. International also relies on two cases which did not even involve the question of waiver. In *First Nat'l Bank of Minneapolis v. White*, 420 F.Supp. 1331 (D.Minn.1976), a national bank filed suit in its home district against a Utah defendant. The defendant filed a compulsory counterclaim and moved to transfer venue to Utah. The bank resisted that motion, citing the venue provision of the Act. The *White* court concluded that a compulsory counterclaim was "not an ordinary case 'against' a bank." 420 F.Supp. at 1338. Although the court recognized that, although archaic, the provisions of the Act were mandatory, it refused to apply the strict venue limitations to preclude transfer in situations of compulsory counterclaims. *Id.* The court expressly stated that waiver of the Act was not in issue; it characterized its decision as a refusal to extend the Act. *Id.*

Similarly, although the Act was criticized in *Aetna Cas. & Surety Co. v. Graves*, 381 F.Supp. 1159 (W.D.La.1974), the actual holding of that case only involved a refusal to expand the reach of the Act, not a waiver of the Act's protection. In *Graves*, a Connecticut insurance company sued an employee of a Louisiana bank and others in district court in the Western District of Louisiana to recover funds lost arising out of employee thefts. The insurance company, believing another bank, the Whitney National Bank of New Orleans ("Whitney"), to be indebted to or in possession of funds belonging to one of the nonresident defendants (also a bank, Banco Mexicano) garnished funds in Whitney in order to obtain jurisdiction over that defendant. Although Whitney was not a party defendant, merely a garnishee, it moved to dismiss the garnishment on, among other grounds, the basis of improper venue. Whitney claimed the garnishment, brought in the Western District of Louisiana was improper because the bank was established in New Orleans, in the Eastern District of Louisiana. The *Graves* court rejected Whitney's argument, holding that garnishment of the funds of a national bank customer under a writ of nonresident attachment was not an action "against" a bank within the meaning of the Act. 381 F.Supp. at 1161–62.

provisions of the Act do not apply because the issuance and sale of travelers checks are not banking activities. But even if we were to take judicial notice that non-banking organizations are engaged in the business of selling travelers checks—a matter we need not decide [15]—there is nothing in the Act which limits the type of action to which its venue provision applies. The case law teaches that, with the possible exception of actions regarding property, *see Casey. v. Adams*, 102 U.S. 66, 67–68, 26 L.Ed. 52 (1880), the Act does not exclude any activities of a national bank from its protection.

█ In *First Nat'l Bank of Boston v. United States District Court*, 468 F.2d 180 (9th Cir. 1972), the plaintiff argued that the Act should cover only suits arising out of banking functions with bank customers and not claims for wages and pension benefits. The court rejected this argument, holding that the type of action did not affect the Act's protection:

> Nor is the type of action relevant to the jurisdictional question with the possible exception of suits concerning real property.... Tort, fraud, breach of contract, securities fraud, and construction of insurance policy claims all have been held to be within the coverage of the statute ....

468 F.2d at 183 (citations omitted). *See Radzanower*, 426 U.S. at 149, 96 S.Ct. at 1991 (1976) (securities fraud); *Langdeau*, 371 U.S. at 556, 83 S.Ct. at 521 (1963) (conspiracy to defraud insurance company); *Fisher v. First Nat'l Bank of Chicago*, 538 F.2d 1284 (7th Cir. 1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778 (1977) (credit cards); and *Buffum*, 192 F.2d at 59 (contract to sell steel). There is simply no support for International's argument that litigation concerning a bank's business of selling travelers' checks is excluded from the Act's protection. That non-banking organizations also conduct travelers checks' businesses is irrelevant. Thus, we reject International's argument that a national bank's travelers checks business is not protected under the Act.

## IV

We now turn to the second suit in issue, International's suit against BAC. After its suit against Bank of America was dismissed for improper venue, International's suit against BAC was dismissed for failure to join Bank of America, an indispensable party. International now argues that Bank of America is not an indispensable party. International argues that the real party in interest regarding registration of the term "International Travelers' Cheques" is neither Bank of America nor BAC, but is BA Cheque Corporation, a wholly-owned subsidiary of BAC.[16] International argues, for the first time on this appeal, that Bank of America and BAC were not "really" affected by International's attempted registration, but that they opposed its registration application only in order to ensure that International would be limited to the Northern District of California for any appeal. Unfortunately for International, if this was the strategy of the two named opposers, it has been successful. But a large share of the responsibility for the dismissal of the action against BAC must lie at International's own doorstep.

### A

The major problem with regard to International's argument is that, although International now argues that Bank of America is not an indispensable party, the trial court expressly relied on International's earlier, specific concession that Bank of America

---

**15.** A judicially noticed fact must be one not subject to reasonable dispute. Fed.R.Evid. 201; *see Citizens For a Better Environment v. United States Environmental Protection Agency*, 649 F.2d 522 at 526 n.6 (7th Cir. 1981).

**16.** International claims, at one point in its brief, that BA Cheque Corporation is wholly owned by Bank of America and, at other points, that it is wholly owned by BAC. In their brief, Bank of America and BAC state that BA Cheque Corporation is wholly-owned by BAC. Although we do not rely on statements of ownership not in the record for any holding in this opinion, we assume for discussion that BA Cheque Corporation is wholly-owned by BAC.

*was* an indispensable party. In International's answer to BAC's motion to dismiss, International stated:

> Defendant, [BAC], has requested this Court to dismiss it from this action because [Bank of America], an indispensable party, has been previously dismissed for improper venue. *While it is admitted that [Bank of America] is an indispensable party to this action*, the Plaintiff maintains that its previous dismissal from the action was erroneous, and a motion to reconsider the dismissal is currently pending before this Court.

R., No. 29 at 7 (emphasis added).

The district court specifically relied on International's admission. BAC had urged dismissal on several grounds, of which the district court specifically considered two: failure to join the Commissioner of Patents as an indispensable party and failure to join Bank of America as an indispensable party. The court found that regardless of whether the Commissioner of Patents was necessary, dismissal was required because of International's admission that Bank of America was an indispensable party. The court stated:

> Plaintiff disagrees with defendant's contention that the Commissioner is an indispensable party. *Plaintiff concedes, however, that Bank of America is an indispensable party.*[1] The court finds it unnecessary to determine whether the Commissioner is an indispensable party.... [U]nder either circumstance, the action would be dismissed.

---

[1] Plaintiff contends that this court's earlier ruling with regard to Bank of America was erroneous.

*International Travelers Cheque Co. v. Bank America Corporation* No. 80–C–2817, Mem.op. at 2–3 (N.D.Ill. Dec. 19, 1980).

■ International's new belief that Bank of America is not an indispensable party comes too late. It is well settled law that a party cannot complain of errors which it has committed, invited, induced the court to make, or to which it consented. *See United States v. Rojas*, 574 F.2d 476, 480 (9th Cir.

1978) (defendants held to copyright date conceded in trial); *Illinois Cent. R.R. Co. v. Brotherhood of Locomotive Engineers*, 443 F.2d 136, 143 (7th Cir. 1971) (defendant held to its denial at trial that a notice given pursuant to a collective bargaining agreement created a jurisdictional dispute between unions); and *Hanks v. United States*, 388 F.2d 171, 173 (10th Cir.), *cert. denied*, 393 U.S. 863, 89 S.Ct. 144, 21 L.Ed.2d 131 (1968) (where defense counsel had requested, in presence of jury at trial, production of certain statements, but on appeal claimed the granting of that request had constituted error, "[i]f there was error, it was invited by defense counsel and he cannot now complain").

■ Because International conceded that Bank of America was an indispensable party, the district court properly dismissed the suit. Thus, International cannot now complain of error, when any error was of its own making.

### B

■ Along with its argument that Bank of America is not an indispensable party, International now argues, for the first time on appeal, that BAC also is not an indispensable party and that the real party of interest is BA Cheque Corporation. But although this argument is interesting, it comes too late. International failed to raise this issue despite three separate opportunities before the district court and two separate opportunities before the Trademark Trial and Appeal Board.

As Judge Coffin stated, a critical feature of the appellate process is "the focus of a prior heat-tested decision." F. Coffin, *The Ways of a Judge: Reflections from The Appellate Bench* 52 (1980). It would be patently unfair for this appellate court to consider the "real party in interest" argument now, when the parties have developed no factual record on this point and the district court did not have the opportunity to consider it. This argument simply has

not been "heat-tested".[17] *See Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1333 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977) (appellant could not argue that complaint failed to state a claim because that argument had not been presented to the trial court); *Cannon v. U. S. Acoustics Corp.*, 532 F.2d 1118, 1119 (7th Cir. 1976) (appellants could not complain of faulty procedures used by the trial court, because "[e]ven if these claims were meritorious, and we think they are not, they cannot be urged on appeal because none of the points of error was presented to the district court"); and *Desert Palace, Inc. v. Salisbury*, 401 F.2d 320, 324 (7th Cir. 1968) (appellant could not argue, for the first time on appeal, that the appellee committed a tortious act in Illinois and was, therefore, subject to service of process).

It is true that there are narrow exceptions to the rule that a ground for reversal cannot be presented for the first time on appeal. As we stated in *Stern*, 547 F.2d at 1333, the rule must give way "where jurisdictional questions are presented or where, in exceptional cases, justice demands more flexibility," *citing Federal Savings and Loan Ins. Corp. v. Quinn*, 419 F.2d 1014, 1019 (7th Cir. 1969). Here, International's argument does not present a jurisdictional question. Nor can we see any circumstances which make it an exceptional case. Therefore, we shall not consider International's "real party in interest" argument.

### V

For the foregoing reasons, we find no error in the district court's decisions. International's suit against Bank of America must fall for improper venue. Ordinarily, we would question whether the result of a finding of improper venue should not be a transfer rather than dismissal. But the district court considered transfer and concluded that because none of the parties had

requested transfer, and because it was unable to discern a court of proper venue, transfer was not possible. This aspect of the court's ruling was not challenged on appeal. Therefore, we conclude that the dismissal must stand. International's suit against BAC must fall due to International's own concessions. Thus, the dismissals of both actions are

Affirmed.

---

**17.** Judge Coffin added:

[B]oth sense and fairness dictate that the same ground rules govern the decision-making process in both arenas [trial court and appellate court]. Unlike a congressional committee, a government department head, or a business executive, an appellate court may not consider every last piece of informa-

tion that comes to its attention. It is restricted in two ways: it must confine itself to the factual record established in the trial court or administrative agency, and it must generally recognize only those legal issues which were raised in the trial court.

Coffin, *Ways of a Judge* at 53.